## WILLS.

[Circuit Court of Auglaize County.]

LYDIA M. WEST, AS EXECUTRIX, ETC., v. LILLIAN KNOPPENBERGER.

Decided, November 25, 1903.

*Testamentary Capacity, although Body and Mind are Enfeebled—To Show Lack of the Burden of Proof is upon the Contestants—Defendants not Required to Affirmatively Show Testamentary Capacity—Jury Must Find that Testator did not Exercise his Own Free Will—Hypothetical Question Containing Indicia of Lack of Testamentary Capacity Competent—Expert's Opinion of Value, when—Materiality of Facts in Hypothetical Question not for the Jury—Questions to Jury Need be Answered only in Case of a General Verdict.*

1. A person may possess testamentary capacity even though enfeebled in body and mind by age and disease; though his memory may be impaired in a degree, and his mind disturbed by hallucinations or delusions (not necessarily influencing the mind in making testamentary disposition of property); though his mind may suffer discomposure and derangement in consequence of melancholy, grief, misfortune, sickness or disease (not of a nature to deprive him of the rational faculties common to men); and although he lacks contractual capacity or capacity to transact the ordinary business of life. Hence, it is improper to charge the jury in a will contest that "in order to be able to make a will it is necessary that a man shall have mental capacity sufficient for the transaction of the ordinary business of life; such an instruction is not cured by giving elsewhere in the charge proper rules and *criteria* for determining testamentary capacity, but which do not qualify such improper charge.

2. The order of probate is *prima facie* evidence of the due execution, attestation, and validity of a will, and when such order is offered in evidence in an action to set the will aside, the burden of proof is upon the contestants to prove by a preponderance of evidence that testator was of unsound mind and memory at the time of executing his will, or was under restraint or control of undue influence.

3. A charge from which the jury may assume that the burden of proof is upon the defendants in a will contest to show affirmatively the testamentary capacity of testator, is improper; the charge should require contestants to show affirmatively lack of testamentary capacity before the will could be set aside.

4. An instruction that there is no valid will unless the jury believe from the evidence that testator, of his own free will, not only intended to make such disposition of his property as made in the alleged will, but was also capable of knowing what he was doing, understanding to whom he was giving his property and in what proportions, and of whom he was depriving it as his heir and who would otherwise have inherited it, and was also capable of understanding the reasons for giving or withholding his bounty to them, is improper; the charge should have been to the effect that the will was valid unless the jury find from the evidence that testator did not make such disposition purposely and of his own free will.

5. A hypothetical question propounded to an expert by the contestant in an action to set aside a will which indicates what contestant claims to be the physical and mental condition of testator at the time of making of his alleged will, and that as a consequence of such condition he was of unsound mind, which *indicia* of lack of testamentary capacity are controverted in the case, is competent where there is evidence tending to establish the facts assumed in the question; and while an answer directly responsive to such question to the effect that testator was mentally unsound would be insufficient to set the will aside, yet it is competent as tending to establish lack of testamentary capacity.

6. The opinion of an expert based upon facts assumed in a hypothetical question is of no value unless all the assumed facts forming the basis of such opinion are found by the jury to be true; and where such hypothetical question assumed the existence of various facts not apparently immaterial, which the jury may have found to be not established by the evidence, and there is nothing in the evidence to indicate that the expert deemed such assumed but unproved facts immaterial or unessential to the basis of the opinion testified to, it was improper to charge the jury to the effect that such opinion may be entitled to *some* weight or value though the facts assumed in the question upon which the opinion was based may not be true, provided the jury should find that the facts were substantially as assumed.    Therefore, a charge that "the weight to be given to *such opinion* depends *largely* upon * * * whether or not the question and statement of facts contained in it, upon which the opinion was expressed or based, was a true statement of the facts as to testator's condition, as you find it to exist from the testimony," and that "if the question or the statement of facts put to the witnesses upon which they have expressed an opinion, do not embody the facts as you find them to have been established by the testimony, then the opinion of said experts is of *little, if any value* in determining the question in the case."    "If, however, the questions embody *substantially* the facts as you find them to have existed," then the opinions are

to be given such weight as the jury think them entitled to, is held to be erroneous.

7. It is not within the province of the jury to determine what facts assumed in a hypothetical question propounded to an expert are material or immaterial. The questions should be so framed as to include only such facts as the evidence may warrant the jury, in finding to exist, and not so as to allow the jury to speculate upon what is material and what immaterial. A *fortiori*, is this true where the question assumes but two main facts both of which seem to have been regarded as material by the experts.

8. The court may properly refuse to submit questions to the jury for answer under Section 5201, Revised Statutes, when the request therefor fails to contain the condition that such questions need only be answered in case a general verdict is rendered.

PARKER, J., (sitting in place of Mooney, J.); DAY, J., and NORRIS, J., concur.

The proceeding in the court below was by Lillian Knoppenberger, defendant in error herein, against Lydia M. West, as executrix of the last will and testament of James Knoppenberger, deceased, and as sole devisee and principal legatee of said decedent, to contest said last will and testament on the grounds:

First. That at the time of the making of said will said decedent was mentally incapacitated from making a testamentary disposition of his property; and

Second. Because said Lydia M. West had exercised an undue influence over his mind causing him to devise and bequeath his property to her.

The verdict of the jury was in favor of the contestant generally, finding that the paper writing is not the last will and testament of James Knoppenberger, deceased. A motion for a new trial was made on various grounds, involving among other questions those which we shall discuss, which motion was overruled and judgment was entered upon the verdict.

The principle grounds urged in this court against said verdict and judgment are:

First. That the verdict is against the weight of the evidence.

Second. That certain hypothetical questions asked by counsel for defendant in error of expert witnesses were improper in form, not being authorized or justified by any evidence adduced.

Third.    That the court erred in failing to charge certain propositions submitted by counsel for plaintiff in error.

Fourth.    That the court erred in refusing to submit certain interrogatories to be answered by the jury at the request of counsel for plaintiff in error; and

Fifth.    That the court erred in its charge on the subject of testamentary capacity; also on the subject of expert testimony adduced in response to hypothetical questions, and also with respect to the burden of proof.    Our conclusions upon other questions seem to us to make it unnecessary and inadvisable to consider and pass upon the weight of the evidence, and we shall not do so.    For the same reasons we shall not pass upon the question whether the court should have charged the jury that there was no evidence tending to show undue influence, and that therefore they should find on that question in favor of the defendant below. . The hypothetical question to which objection is urged, submitted to several physicians who were witnesses in the case, was as follows:

"What in your opinion would be the condition of a man's mind as to being sound or otherwise, if in 1889 or 1890 he had contracted the disease of syphillis, and in July, 1898, was found in the last stage of syphillis, with pains in his head about the base of the brain and throughout the head, with the scars of syphillitic ulcers on his lower limbs, and was on the 2d of November, 1898, suffering in the last stage of cancer of the lower bowel, not having had an operation of the bowels for seven days?"

The question indicates what the contestant claimed was the physical and mental condition of the testator at the time he executed the alleged will, i. e., that in consequence of the physical infirmities described his mind was unsound.    That the testator was afflicted with syphillis was denied, and that he had not had a movement of the bowels for so long a time as supposed in the question was also controverted, but it can not be said that there was no evidence adduced tending to show that this was the physical and mental condition of James Knoppenberger at that time; and while it is true that an answer directly responsive, such as was given by certain of the witnesses to the effect that

he was then mentally unsound, would not be sufficient to warrant the setting aside of the will since one need not be in all respects mentally sound to possess testamentary capacity, yet such evidence would be competent and would tend to establish, or would be a step towards establishing such mental condition as would render one incapable in law of making a valid will. We therefore hold that the court did not err in allowing this question to be asked and answered.

From the record it is uncertain to our minds whether the four propositions submitted on behalf of the plaintiff in error to be charged to the jury should be regarded as a series, a defect in any one of which would justify the refusal of all, or whether they should be regarded as separate, complete and independent propositions.

The court was asked to charge these propositions, and we are of the opinion that the subsequent waiver of the request to charge the same before argument did not excuse the court from giving them at all, and it is apparent from the record that the court so understood the matter. We are agreed that in the main, these four propositions are correct; also that the substance of most of them was given in the charge to the jury; we are not quite agreed as to whether they should be regarded as a series or independent propositions, nor as to whether the third proposition to the effect that there was no evidence tending to show that James Knoppenberger was under undue influence or restraint in attempting to make his last will and testament should have been given, and since the substantial question involved in the alleged error of the court in its charge may be discussed and disposed of without special reference to these propositions which he was requested to charge, we will not pass upon the question whether the court erred in failing to charge as requested.

The request to the court to submit certain questions of fact to the jury appears in the record as follows:

"Thereupon the defendant, Lydia M. West, requested the court to submit the following questions of fact to the jury with the direction that they answer the same."

Then follows a series of seven questions, all of which the court refused to submit to the jury. In view of the form of

the request it seems clear that the court did not err in refusing to submit these questions, since the Supreme Court has held in the case of *Gale* v. *Priddy*, 66 O. St., 400, reading from the second paragraph of the syllabus:

"Revised Statutes, Section 5201, so far as it relates to special findings upon particular questions of fact, is mandatory only when the request therefor contains the condition that the questions which are submitted shall be answered in case a general verdict shall be returned."

It will be observed that this request did not contain the requisite condition.

Coming now to the charge of the court, and taking up first the part relating to testamentary capacity, we find that the court charged as follows in the very introduction of this question to the jury:

"In order to be able to make a will it is necessary that a man shall have mental capacity sufficient for the transaction of the ordinary business of life," etc.

This, we think, is clearly erroneous. Under the authorities one may be lacking in capacity for the transaction of the ordinary business of life, and lacking in contractual capacity, and yet he may have testamentary capacity. See Paige on Wills, Section 96; Underhill on Wills, Sections 87-88-89 and 139; *Guild* v. *Hull*, 127 Ill., 523 (20 N. E. Rep., 665); *Campbell* v. *Campbell*, 22 N. E. Rep., 620; 6 L. R. A., page 168. See also Beach on Wills, Section 101; 1st Jarmin on Wills, 5th American, from 4th London edition, notes by Randolph Talcott at page 96.

In the text books referred to, many cases are cited in support of the proposition that the same degree of capacity is not requisite to the making of a valid will that is requisite to the making of a contract or the management of the ordinary business of life. The authorities seem to be quite uniform in support of this proposition.

Elsewhere in the charge proper rules and criteria for determining whether testamentary capacity existed are well stated by the trial judge, but this erroneous rule is nowhere qualified and serves itself as a qualification of and addition to all other rules

stated. We regard this as serious, prejudicial and fatal error in the charge.

As to the burden of proof, the rule was correctly stated by the learned judge, when he said "that the order of probate being *prima facie* evidence of the due execution, attestation and validity of the will, it devolves upon the plaintiff to prove by a preponderance of the evidence that at the time said will was executed, the said James Knoppenberger was not of sound mind and memory, or that at that time he was under restraint or · control by some undue influence," and in other parts of the charge statements are made consistent with this, bearing upon the question of the burden of proof; but on the other hand, in various places statements are made as to results that should flow from finding or not finding certain facts that in effect shift the burden of proof upon the defendant; for instance, it is said:

"I say to you that the will in this case is not a valid will unless the jury believe from the evidence under the rules I will hereafter give you, that the testator, James Knoppenberger, deceased, not only intended to make such disposition of his property as is therein made, of his own free will, but was also capable of knowing what he was doing, of understanding to whom he was giving his property, and in what proportions, and of whom he was depriving it, as his heir, who would otherwise have inherited it, and was also capable of understanding the reasons for giving or withholding his bounty to them."

Manifestly this is wrong, and should have been stated in this way:

"I say to you that the will in this case is a valid will, unless the jury find from the evidence that the testator, James Knoppenberger, did not intend to make such disposition of his own free will," etc.

Reading again from the charge:

"If you find from all the evidence, facts and circumstances in this case, that at the time this paper writing was executed the testator had sufficient mental capacity to understand, unaided, the nature, the amount, the kind of his property and the claims and the names of those entitled to his bounty, then you may pass to the second proposition," etc.

Again:

"If you find from the evidence that the paper writing purporting to be the last will and testament of James Knoppenberger is the product of a sound and disposing mind as I have described to you, that it was executed by him, that he understood it, that he knew of what property he was possessed and the persons that would naturally be entitled to his bounty, if he comprehended and understood his true relations to this plaintiff and other members of his family, and that at the time he was not under any restraint or coercion as I have described to you, you will find that this paper does constitute the last will and testament of James Knoppenberger, deceased."

As legal propositions applicable to the facts in issue, these statements are unassailable; clearly such a state of facts as is stated provisionally would support the will, but the trouble with these statements is that they naturally give the jury to understand that they are to find affirmatively that such a state of facts exist before they could rightfully return a verdict sustaining the will, whereas the matter should have been set before them so they would have understood that unless they found affirmatively the antitheses of the state of facts recited, or some of them, they must sustain the will. In this also we find that the court erred to the prejudice of plaintiff in error.

On the subject of the hypothetical question before referred to and the evidence adduced in response thereto, the court charged the jury as follows:

"As bearing upon the question in the case, both plaintiff and defendants have called medical experts, to whom hypothetical questions have been put for the purpose of enlightening you upon the issue between the parties in this case; that is, persons of experience in the medical profession have been called to whom questions embodying certain statements as facts in the case have been put, and upon which statements of facts the witnesses have given their opinions. This is testimony that should be considered by you in determining this question between the parties; the weight to be given to it depends largely upon the skill and the experience and the knowledge of the experts, their learning, their capacity, and whether or not the question and statement of facts contained in it, upon which the opinion was expressed or based, was a true statement of the facts as to the testator's

condition, as you find it to exist from the testimony in this case. If the questions or the statement of facts put to the witnesses upon which they expressed an opinion do not embody the facts as you find them to have been established by the testimony, then the opinion of said experts is of little, if any, value in determining the question in this case. If, however, the questions embody substantially the facts as you find them to have existed, and from the testimony, then you should give to them such weight, as, in your judgment, in the light of all the testimony and the surrounding circumstances in this case, they would be entitled to in the determination of these questions.''

This charge seems to have been copied almost literally from Section 171 of Kincaid's Instructions and Entries, and is said to have been given in a charge in some case. It does not appear to have received the approval of any court of last resort, and so far as we know it has never been questioned or tested. In our opinion it is faulty in several particulars. It implies that the answers of the expert may be entitled to *some* weight, though the statement of facts assumed in the hypothetical question should be found by the jury to be untrue. Observe the language:

''This is testimony that should be considered by you in determining this question between the parties; the weight to be given to it depends *largely* upon  *  *  *  whether or not the question and statement of facts contained in it, upon which the opinion was expressed or based was a true statement of the facts as to the testator's condition as you find it to exist from the testimony in this case.''

It also implies that the testimony may be regarded as having *some* value though the hypothetical question did not embody the facts as the jury might find them to have existed. Note this language:

''If the questions or statments of facts put to the witnesses upon which they expressed an opinion do not embody the facts as you find them to have been established by the testimony, then the opinion of said experts is of little if any, value in determining the question in this case.''

The paragraph immediately following may have corrected this fault in a measure if regarded by the jury as a modification of the paragraph just quoted, but it is not clear that it was so in-

tended or should have been so regarded, and even if so intended and regarded the charge would not be quite right, but would still involve the grave fault that it left it to the jury to say what was a substantial compliance of the requirements of the hypothetical question in the way of proving facts assumed; or, in other words, what facts assumed were material and what were immaterial. In this particular case we regard this as a grave fault and error for the reason that the hypothetical question is brief and embodies but few assumed facts—in fact, but two main facts both of which seem to have been regarded by the experts as material, to-wit: First, that the testator at the time he made his will was in the last stages of syphillis with consequent pains and disabilities; and, secondly, that at that time he was suffering in the last stage of a cancer of the lower bowels and had not a movement of the bowels for seven days. Usually hypothetical questions include many facts, some of which may properly be deemed material, and others immaterial, and it is never safe to leave a jury to speculate upon what is material and what is immaterial of the assumed facts of a hypothetical question. The examiner should so frame his questions and vary their forms as to include in some of them, at least, only such facts as the evidence may warrant the jury in finding he had established. If he should fail to do this, the legitimate result would be a disregard by the jury of the answers given to such question. But even if a jury could be warranted in any case in speculating upon what was material and immaterial in a hypothetical question, or, in other words, whether the facts assumed had been substantially proven, it is clear to us that no such latitude should be given to a jury in this case where the hypothetical question assumes but two main facts, both of which seem to have been regarded by the experts testifying as material facts.

As has been stated though the answer called for by the hypothetical question before mentioned would not, if relied upon, determine whether the testator was possessed of testamentary capacity, yet it tended to throw light upon the question and therefore was admissible. Though the jury should believe and rely upon an answer to the effect that the testator was not sound mentally at the time he made his will, that alone would not jus-

tify it in setting the will aside. However it would be a fact competent to be proved because tending with other evidence to show testamentary incapacity, and because of such answer to the hypothetical question it was proper for the court to charge upon that head. The charge however should have set forth clearly that the jury must find the facts to have existed as as-Rogers, Expert Testimony, Section 32, and cases there cited).

In a case in the Supreme Court of Michigan, Mr. Justice Morse says:

"The answer of an expert witness to a hypothetical question must be supposed to rest on all the facts stated in such question; and if one of these facts is not found in the case, the jury must discard the answer to the question, under all the authorities. And the reason of the rule is founded on principle, and is clearly apparent without argument."

So in another case before the same court, the trial court charged the jury that it was important for them just as far as they could, to look into the evidence and determine whether the facts assumed in the hypothetical question actually existed, adding "because if one fact supposed to be true, included in the question, is untrue, not supported by the evidence, the opinion of the doctor would be valueless. He gives his opinion upon a certain state of facts supposed to be true, and we don't know what his opinion would be if one of these facts were withdrawn."

The cases cited from Michigan are *Turnbull* v. *Richardson,* 69 Mich., 400, 420; *People* v. *Foley,* 64 Mich., 48, 156. See, also, Blashfield, Instructions to Juries, Section 246. I quote a part of the section:

"It is proper to instruct the jury to disregard the evidence (opinions) of expert witnesses based upon hypothetical questions, if the jury should find the hypothesis involved in the question to be not in accordance with the facts."

And after pointing out exceptional cases where the hypothesis assumed need not be fully sustained by the evidence, the author quotes the following instructions given in *Hall* v. *Rankin,* 87 Iowa, 261, and condemned by the Supreme Court of Iowa, to-wit:

"If the facts stated as a basis for the hypothetical question propounded to the medical experts in this case were not substantially correct as shown by the evidence introduced on the trial of the case, then the opinion given by the experts based upon such assumed state of facts is entitled to but little or no weight as may be determined from the evidence. That is to say, the hypothetical facts upon which the question is based must be substantially correct to entitle the conclusion drawn by the expert to have any considerable weight."

The reviewing court said of this instruction that it is erroneous as conveying the impression "that the opinion of the expert might have some weight even though the jury should find the facts assumed as a basis for the opinion were incorrect. * * * The sole value of the opinion must of necessity depend upon the correctness of the statement of facts upon which it is based. If that is incorrect, then the opinion can have no weight or value therefor."

In the case of *The General Convention of the New Jerusalem Church et al* v. *Lucinda Crocker et al* heard before Judges Smith and Swing of the First Circuit, and Shauck of the Second Circuit (now of the Supreme Court), and reported in 7 C. C. R., 327, in the opinion by Judge Shauck it is pointed out that with respect to a material fact assumed in a hypothetical question where the evidence was conflicting, and the trial judge charged that:

"The value of that opinion is, therefore, increased or diminished in proportion as the supposed facts included in the hypothetical question tally with the facts proved in the case."

Of this, Judge Shauck says:

"Logically, if any facts which the evidence does not establish are assumed as a part of the foundation of the expert opinion, the opinion is of no value for the purposes of the case. The theory upon which opinions of experts are admitted is, that the witnesses have knowledge not possessed by the jurors, which forms a foundation for safe conclusions in a particular case. As jurors are not supposed to have knowledge of the value of the several facts assumed as the basis of the opinion of the expert, they should not be set to speculating what his opinion would have been if any fact which the evidence fails to estab-

lish had been omitted from the case. If it were otherwise, there would be no reason for the rule that a hypothetical question which assumes facts which the evidence does not tend to establish, is incompetent. The portion of the charge quoted refers to the facts assumed in the question put to the witness; while the expert's testimony affirmatively shows that many of those facts were not recognized by him as indicative of either sanity or insanity. The jury should have been instructed that if they were of the opinion that any fact assumed by the witness, as the basis of his opinion, was not established by the evidence, they should regard his opinion as of no value, unless his testimony shows that such fact affected only the confidence with which the opinion was held. While the instruction above quoted might have been intended to convey this meaning to the jury, it might have been understood by them as prescribing a law of mathematical proportion as the rule for ascertaining the value of the opinion, if all the facts were not established. There was nothing in the charge to prevent such misleading result.''

We do not find the rule stated anywhere more clearly, nor the reasons therefor more forcible, than in the opinion by Judge Shauck from which the above quotation is made. And while with respect to the charge in the case at bar, it could not be fairly said that any law of mathematical proportion was prescribed as a rule for ascertaining the value of an opinion if all the facts were not established, yet the jury were at liberty to give weight to the opinion according to any law of proportion they might be pleased to adopt if all the facts were not established, or if certain of the facts assumed were shown to be incorrect, and therefore we regard what is said by Judge Shauck as pertinent in the case at bar.

When we come to read the law on the subject of testamentary capacity, and consider that one may have such capacity even though of extreme old age; even though enfeebled in body and mind by age and disease; even though the memory may be impaired in a degree, and the mind may be disturbed by hallucinations or delusions (not necessarily influencing the mind in making a testamentary disposition of property); even though the mind of the testator may not be sound in the sense of being whole, unbroken, unimpaired, unshattered by disease or otherwise, but it may suffer discomposure and derangement in con-

sequence of melancholy, grief, sorrow, misfortune, sickness or disease, yet, if such discomposure or derangement is not so great as to deprive the testator of the rational faculties common to men, he may still have testamentary capacity.

I say when we come to consider this in the light of the evidence in this case as to the physical and mental condition of the deceased, and the simple character of the will he signed, we feel bound to hold that the charge in the particulars pointed out contained serious errors prejudicial to the plaintiff in error and which may have produced a result different from that which might have been produced by a correct charge.

In this case because of the state of the evidence *pro* and *con* as to the testamentary capacity of the deceased, the evidence positive and negative, or, I may say, the paucity of evidence as to his loss of memory, lack of capacity to transact his ordinary business, delusions operating upon his mind so as to influence him in the disposition of his property; unnatural aversion to the natural objects of his bounty in view of their conduct toward and treatment of him; anything complicated or difficult in the problems to be considered and solved in the making of such disposition of his property as was attempted by the will in question, and other elements and subjects of inquiry ordinarily submitted to the jury as tests of testamentary capacity, and especially in view of the general character of the answers of physicians to the hypothetical questions mentioned, that in their opinions his mind was not, or might not have been sound, we think that the court should have given more prominence and emphasis to the phase of the law that sustains testamentary dispositions though the mind of the testator may not have been in all respects sound or the memory perfect, or the mind entirely clear or free from prejudice or even delusions (ideas not sufficiently elucidated in the charge) ; and the court should have avoided so charging as to in effect shift the burden of proof and impose it upon the defendant, a fault quite apparent in the charge.

Because of these errors the judgment of the court below is reversed and the verdict is set aside and the case will be re-

manded to the court of common pleas, to be there proceeded with according to law.

*Stueve & Connaughton, Jesse Stephens* and *Sumner & Tucker,* for plaintiff in error.

*Goeke & Hoskins, Layton & Son* and *D. F. Mooney,* for defendant in error.